McIlvaine, C. J.
The only questions made in the argument of this ease relate to the validity of the contract of association. No objection has been made, in this court, or the courts below, as to the nature of the relief sought by the cross-petition of defendant, and that question has not been considered. That all contracts in partial restraint of trade are not void as against public policy, is too well settled to be gainsaid ; while, on the other hand, it is as fully established, as a general rule, that contracts in general restraint of trade are against public policy, and, therefore, absolutely void. Upon the authorities, however, the line, between such as are void and those that are binding, is not very clearly defined.
*672 Public policy, unquestionably, favors competition in trade, to the end that its commodities may be afforded to the consumer as cheaply as possible, and is opposed to monopolies, which tend to advance market prices, to the injury of the general public.
We think the contract before us should not be enforced. Hy it all the salt manufacturers (with one or two exceptions) in a large salt-producing territory, and whose aggregate annual product is about 140,000 barrels, have combined for the expressed purpose of regulating the “ price and grade of salt.” A board of directors is chosen. All salt made or owned by the membe'rs, as soon as packed into barrels, is placed under the control of the directors. “ The manner and time of receiving and distributing salt shall be under the control of the directory.” “ Each member of the association binds himself to sell salt only at retail, and then only to actual consumers, at the place of manufacture, and at such prices as may be fixed by the directors from time to time.” The directors make monthly reports of sales, and pay over the proceeds to the members, in proportion to the amount of salt received from each.
The clear tendency of such an agreement is to establish a monopoly, and to destroy competition in trade, and for that reason, on grounds of public policy, courts will not aid in its enforcement. It is no answer to say that competition in the salt trade was not in fact destroyed, or that the price of the commodity was not unreasonably advanced. Courts 'will not stop to inquire as to the degree of injury inflicted upon the public; it is enough to kuow that the inevitable tendency of such contracts is injurious to the public.
Nor is this agreement within the principle which permits a person to bind himself not to engage in trade at a particular place. Here the restraint was general. A member of this association, under this agreement, could not engage in the traffic at any place during the life of the association, except only to retail to actual consumers, at the place of ■manufacture, and then only from salt in bulk, and at the-price named by the company.
*673 It is also claimed, on behalf of the plaintiff, that this-agreement does not affect the right of the members to continue the industry in which they are engaged without restraint; that the company can not control or limit the-quantity of salt to be manufactured, and, therefore, the-contract does not injuriously affect the interests of labor. We think that the provision that “ the manner and time of receiving and distributing salt shall be under the control of the directory,” confers upon the company ample power to embarrass the freedom of the members as to the quantity of salt which they might wish to manufacture. There is no agreement that the company will receive all the salt manufactured, and at the time when it may be ready for sale.
On the whole case, we are clearly of opinion that this agreement is void as against public policy.

Judgment affirmed.